NOT DESIGNATED FOR PUBLICATION

Nos. 115,361
115,362

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEVIN M. SUBLETT,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed April 7, 2017. Affirmed.


*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.


*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., STANDRIDGE and GARDNER, JJ.


*Per Curiam*:  Devin M. Sublett appeals from the judgment of the trial court denying his motion to modify his sentence from a total of 49 months' imprisonment to a total of 24 months' imprisonment after revoking his probation. Sublett contends that the trial court abused its discretion when it denied his motion to modify his sentence. We disagree and affirm the judgment of the trial court.

Sublett pled guilty to one count of offender registration violation in criminal case 13-CR-1724 and one count of possession of cocaine in criminal case 14-CR-1124. Sublett entered his pleas in accordance with a plea agreement, which resulted in the consolidation of the 13-CR-1724 and 14-CR-1124 cases. Under the plea agreement, the State would recommend that Sublett be sentenced to prison, that Sublett serve the low box grid sentence on both convictions, and that Sublett's sentences for both convictions run concurrently. The agreement, however, also allowed Sublett to ask the trial court to sentence him to probation.

At Sublett's sentencing, Sublett requested that the trial court sentence him to probation. Sublett, whose sentence was presumptive prison based on his possession of cocaine conviction, argued that the court should grant his probation request for the following reasons: he had strong family support; he had taken responsibility for his actions; he had struggled with drug addiction; he could benefit from drug treatment services; and he was only 23 years old. The State opposed Sublett's probation request based on the length and severity of Sublett's criminal history, which went back 10 years and included juvenile marijuana and rape adjudications, as well as his failure to adjust despite being given multiple opportunities.

The trial judge asked Sublett why he believed he was amenable to probation. Sublett responded that he no longer surrounded himself with the people who influenced him to make bad choices. He stated that he was also working hard to make a future for himself and his son. In setting out the reasons for granting Sublett's request for probation, the trial judge stated:

> "Well, here's where I am in your case:
> "Number one, you are still a young person, and there's some hope that you can salvage your life and get out of this rut that you've found yourself in.

2

"I also am one who, in many instances, believe that treatment is a better resolution in offender cases than prison. . . . .

"So I'm going to give you this opportunity, but here's the deal: It's going to be a one-time opportunity, zero tolerance for any probation violations. No exceptions are going to be made. You come back again in this court, and you're going to be in prison.

"And, as an added incentive to that, whereas the recommendation is already imposed at the low number and run them concurrently, I'm going to impose the low number, but I'm going to run the sentences consecutively. So instead of 32 months, you're going to be looking at 49 months in prison if you come back again. And I structure the sentence in that way, Mr. Sublett, not as any threat or intimidation or anything to you, but just as another item of incentive to have you realize what's going to happen if you screw up again.

"And let me make another suggestion to you. When you get all the paperwork done in this case, someone is going to come up with a date that's going to be your discharge date that you're going to be discharged in this sentence, and here's what I want you to do with that: Take that date, write it down on a little piece of paper about the size of a driver's license, and you take that piece of paper down to Kinkos or somewhere and get it laminated in plastic, and then you carry that around in your pocket every day. I don't mean stick it in your wallet where you forget about it; I want it in your pocket every day.

"If you change keys and other things several times throughout the day when you reach in there to, you know, pull your car keys out or make change for whatever it might be, you're going to see and feel and touch that little piece of paper at the end of the day when you put all your stuff up on the dresser when you go to bed at night and you see it again. So several times throughout the day you're going to be reminded: If I screw up, I'm going to prison and that's the time that I will have to serve.

"And, again, that's, perhaps, an incentive to you . . . to keep your nose clean."

Accordingly, the trial court sentenced Sublett to 18 months' probation, with a total underlying prison sentence of 49 months followed by 24 months' postrelease supervision.

Sublett's intensive supervision officer later alleged that Sublett had violated the terms of his probation by committing the following new crimes: possession of

methamphetamine, unlawful sale of methamphetamine, unlawful sale or distribution of narcotics, no tax stamps, and felon in possession of a firearm.

The trial court later held a joint probation violation and sentencing hearing. Sublett had already pled guilty to being a felon in possession of a firearm under a plea agreement with the State; the plea agreement called for a 23-month prison sentence. As a result, the State dismissed Sublett's remaining new criminal charges. The trial court decided to address Sublett's probation violation before sentencing him for his new felon in possession of a firearm conviction.

In regards to the probation violations, Sublett admitted that he had committed the new crimes of felon in possession of a firearm and possession of methamphetamine. Sublett recognized that he would likely go to prison because of his probation violations. Nevertheless, Sublett argued that his original underlying prison sentence was not appropriate for the crimes he had committed. Sublett requested that the trial court modify his original 49-month prison sentence to a 24-month prison sentence. In essence, Sublett argued that the aggregate sentence he would have to serve would be disproportionate to the crimes he had committed if the trial court ran his impending felon in possession of a firearm sentence consecutive to his offender registration violation and cocaine possession sentences. In making this request, Sublett emphasized that he had strong family support; that he had taken responsibility for his actions; and that he had made poor choices while struggling with his drug addiction.

The State countered that the trial court should impose Sublett's original 49-month underlying prison sentence because Sublett had been given many opportunities by both the State and the trial court. The State also reminded the trial court that it had granted Sublett's request for the opportunity of probation on the condition that Sublett understood that he would have to serve a 49-month prison sentence if he violated the terms of his probation.

Before rendering its decision, the trial court asked Sublett if he had anything he wanted to say. Sublett emphasized that he went to drug treatment and did well. Sublett also stated:

"I came back. I did good. I got a job my first day back out of treatment. I did everything I was supposed to. . . .

"And I don't sell drugs. . . .

"And I do take responsibility. You know, I shouldn't have been in possession of a firearm, shouldn't be doing drugs. But there's ways that people deal with this situation in life and that's the way I ended up choosing a long time ago and I ain't never [*sic*] been able to change it and I want to change it."

The trial judge immediately responded as follows:

"Well, Mr. Sublett, let me just tell you, as I tell a lot of defendants. The prisons are full of people who have drug and alcohol problems. It's just a fact.

"My experience as a member of the parole board and having heard the Secretary of Corrections speak to the issue, I can tell you that probably 70 percent of the people in prison have drug and alcohol problems; some more or less severe than others.

"And I certainly get the fact, that when people are under the influence of drugs and alcohol, they don't think clearly, they don't make good decisions, and they end up going to prison a lot of times.

"And as [the State] pointed out, in the two prior cases, you were given a lengthier sentence as an incentive to keep your nose clean and hopefully keep you from going to prison.

"Back at the time of your first probation violation in those two cases—and we had a hearing just January 6th of this year. And at that hearing, I very clearly explained to you that the expectation was for zero tolerance with no exceptions for any probation violations, and I wanted to impress upon you the fact that if there was a probation violation, you were facing 49 months in prison with no exceptions.

"And I'm sure I told you, as I do most people when I impose that expectation, I do that with the statement that I'm not imposing that expectation or imposing a lengthy sentence with any intention being intimidating or threatening. Rather, I just want to give

5

you something to think about when you're out on probation. Because you know when you're out on probation, if you screw it up, you're going to prison for 49 months.

"And one thing that I take some pride in, Mr. Sublett; and that is, when I say things, I pretty much mean them and I'm a man of my word and I don't make exceptions. Very, very rarely.

. . . .

"So turning then to 13 CR1724 and 14 CR 1124, I find on his admission that Mr. Sublett has violated his probation conditions. I will revoke the underlying sentence— revoke his probation and impose the underlying controlling sentence in that case which is going to be 49 months."

Next, the trial court sentenced Sublett on his new felon in possession of a firearm conviction. The trial court stated that it would "offer some little bit of leniency" by ignoring the terms of Sublett's plea agreement and imposing the low box grid sentence of 19 months' imprisonment.

Although Sublett's 13-CR-1724 and 14-CR-1124 criminal cases had been consolidated, Sublett's attorney filed two separate timely appeals for both cases. Since this appeal was taken, this court issued an order reconsolidating the cases for appeal.

*Did the Trial Court Abuse Its Discretion?*

Under K.S.A. 2016 Supp. 22-3716(c)(1)(E), after revoking a defendant's probation, the trial court may impose the defendant's original underlying sentence or "any lesser sentence." Sublett recognizes that trial courts are not required to impose a lesser sentence upon a defendant's request. Nevertheless, Sublett argues that no reasonable person would have denied his request to modify his total underlying sentence for his offender registration violation and cocaine possession convictions from 49 months' to 24 months' imprisonment. The State counters that the trial court's denial of Sublett's request was wholly reasonable because Sublett squandered the opportunity of probation.

6

Moreover, Sublett understood that he would have to serve a 49-month prison sentence if he violated his probation.

Appellate courts review the trial court's decision to revoke a defendant's probation for an abuse of discretion. See *State v. Brown*, 51 Kan. App. 2d 876, 879-80, 357 P.3d 296 (2015), *rev. denied* 304 Kan. 1018 (2016). An abuse of discretion occurs when there is "a factual or legal error or when no reasonable person would agree with its decision." *Brown*, 51 Kan. App. 2d at 880.

Here, it is readily apparent that Sublett's arguments are meritless. The extent of Sublett's argument is that the trial "court focused on remaining true to its word that it would make 'no exceptions,' rather than doing what would most benefit [him] and the community, especially given [his] continuing addiction." Although not entirely clear from his brief, it seems that Sublett believes that the 24-month prison sentence would have been most beneficial to him and the community for the following reasons: (1) that "there was no indication that [he] failed to participate in required treatment" before he violated his probation; (2) that he has "acknowledged his drug problems, and accepted responsibility for his actions stemming from his abuse;" and (3) that his "crimes, including his new conviction, all stemmed from his substance abuse."

These arguments fall short of the mark. Sublett admittedly committed new crimes, including a new drug crime, while he was on probation. The fact that Sublett went to treatment and then clearly relapsed by possessing methamphetamine merely shows that he is not amenable to probation. Besides, nothing about Sublett's stint at treatment and then later relapse and commission of crimes supports that it would have been more beneficial for the community for Sublett to have had a 24-month prison sentence as opposed to a 49-month prison sentence. Moreover, the trial court had taken into consideration Sublett's arguments about acknowledging his drug problem and taking responsibility for his actions when it decided to grant his probation request and impose

the 49-month underlying sentence. Thus, this was the second time the trial court had heard those arguments. In addition, the trial court was hearing those arguments after Sublett violated the terms of his probation.

Finally, Sublett understood that he would be facing 49 months' imprisonment if he violated the terms of his probation. Sublett's assertion that the trial judge did not consider the facts of his case and only cared about "remaining true to his word that it would make 'no exceptions'" are out of step with the record. As mentioned in the facts section of our opinion, the trial judge was very clear about his expectations. He told Sublett that he was granting Sublette's probation request on the condition that he would run Sublett's underlying offender registration violation and possession of cocaine sentences consecutively, which would result in an underlying sentence of 49 months' imprisonment. He told Sublett that he was not doing this to threaten Sublett but to give him an incentive to excel on probation. The trial judge even encouraged Sublett to keep a reminder in his pocket of how long he had until his term of probation expired. This would be a reminder to him that he needed to comply with his probation conditions or else he would go to prison.

The trial judge's statements about being "a man of [his] word" and not "mak[ing] exceptions" while denying Sublett's request to modify his total underlying prison sentence were made to explain the following: (1) that he had given Sublett an opportunity; (2) that he had let Sublett know the consequences of failing to make the best of that opportunity; (3) and that he would now impose those consequences given Sublett's failure on probation. Furthermore, the State correctly points out that it is not the case that the trial court made "no exceptions" with Sublett. First of all, for Sublett's cocaine possession conviction, his sentence was presumptive prison and the State was recommending that Sublett serve that prison sentence. As a result, the trial court was making an exception for Sublett by sentencing him to probation instead of prison. Moreover, although it denied Sublett's sentence modification request, the trial court

8

explicitly stated that it was offering Sublett some "leniency" on his new felon in possession of a firearm conviction. As a result, it ignored the terms of his plea agreement, which called for 23 months' imprisonment, and instead imposed the low box grid sentence of 19 months' imprisonment. We therefore affirm.

Affirmed.